UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IHI E&C INTERNATIONAL
CORPORATION *et al.*,

      Plaintiffs,

    v.

ROBINSON MECHANICAL
CONTRACTORS, INC., d/b/a
ROBINSON CONSTRUCTION
COMPANY *et al.*,

      Defendants.

CIVIL ACTION NO.
1:19-cv-04137-JPB

## ORDER

Before the Court is Plaintiff IHI E&C International Corporation's ("IHI")

Motion for Partial Summary Judgment ("Motion").  ECF No. 139.  Having

reviewed and fully considered the papers filed therewith, the Court finds as

follows:

## I.    BACKGROUND

In September 2019, IHI filed suit against Robinson Mechanical Contractors,

Inc. ("Robinson") and Fidelity and Deposit Company of Maryland alleging several

causes of action in connection with a complex construction project in Elba Island,

Georgia.  In the instant Motion, IHI urges the Court to find that certain unpaid

invoices in the amount of $5.2 million that Robinson submitted to IHI (the

"Outstanding Invoices") were extinguished because Robinson did not fulfill a

statutory requirement to file a claim of lien or affidavit of nonpayment within sixty

days of signing a lien waiver.  The following relevant facts are not in dispute.

Robinson entered into two purchase order contracts with IHI that required

Robinson to submit, as a condition precedent to payment of any invoice, a

prescribed form constituting a lien waiver under O.C.G.A. § 44-14-366 (the

"Waiver Statute").  The prescribed form contained the following language:

> **NOTICE:  WHEN YOU EXECUTE AND SUBMIT THIS DOCUMENT, YOU SHALL BE CONCLUSIVELY DEEMED TO HAVE BEEN PAID IN FULL THE AMOUNT STATED ABOVE, EVEN IF YOU HAVE NOT ACTUALLY RECEIVED SUCH PAYMENT, 60 DAYS AFTER THE DATE STATED ABOVE UNLESS YOU FILE EITHER AN AFFIDAVIT OF NONPAYMENT OR A CLAIM OF LIEN PRIOR TO THE EXPIRATION OF SUCH 60 DAY PERIOD.  THE FAILURE TO INCLUDE THIS NOTICE LANGUAGE ON THE FACE OF THE FORM SHALL RENDER THE FORM UNENFORCEABLE AND INVALID AS A WAIVER AND RELEASE UNDER O.C.G.A. SECTION 44-14-366.**

The version of the Waiver Statute in effect at the time Robinson executed

the lien waivers provided that "[w]hen a waiver and release provided for in [the

Waiver Statute] is executed by the claimant, it shall be binding against the claimant

*for all purposes*."  O.C.G.A. § 44-14-366(f)(1) (emphasis added).  The Waiver

Statute further provided that

2

(2) Such amounts [as stated in the waiver and release] shall conclusively be deemed paid in full upon the earliest to occur of:

(A) Actual receipt of funds;

(B) Execution by the claimant of a separate written acknowledgment of payment in full; or

(C) Sixty days after the date of the execution of the waiver and release, unless prior to the expiration of said 60 day period the claimant files a claim of lien or files in the county in which the property is located an affidavit of nonpayment . . .  [(the "Notice")].

*Id*. § 44-14-366(f)(2).

Over the course of the purchase order contracts, Robinson periodically submitted invoices and the accompanying prescribed lien waiver forms to IHI. The sum of the invoices submitted under the contracts totaled more than $30 million.  Robinson did not file Notices for any of the invoices, even though payments for some of the invoices remained overdue past sixty days.  IHI repeatedly paid invoices that were more than sixty days past due without objection or otherwise contending that its obligation to pay the invoices was extinguished because Robinson did not file the required Notices.

However, IHI now contends that its obligation to pay the Outstanding Invoices was extinguished when Robinson failed to file a Notice for those invoices.

3

## II.    <u>DISCUSSION</u>

### A.    Legal Standard

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56) (quotation marks omitted).  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court … is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen*, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all

factual inferences arising from it in the light most favorable to the nonmoving party." *Id.*

After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist. *Id.* In carrying this burden, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

In sum, if the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### B.    Analysis

It is axiomatic that a federal court exercising diversity jurisdiction must apply the substantive law of the state where it sits. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 535 (1958) ("It was decided in *Erie [R.R.] Co. v. Tompkins* that the federal courts in diversity cases must respect the definition of state-created rights and obligations

by the state courts.") (italics added).  The parties agree that Georgia law applies

here, as designated in the purchase order contracts.[1]

"In determining the law of the state, federal courts must follow the decisions

of the state's highest court, and in the absence of such decisions on an issue, must

adhere to the decisions of the state's intermediate appellate courts unless there is

some persuasive indication that the state's highest court would decide the issue

otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982)

(stating that where the Georgia Supreme Court had not ruled on an issue, the task

of the Eleventh Circuit Court of Appeals is "to carefully consider the decisions of

the Georgia Court of Appeals to determine whether" the district court decided the

case consistent with those decisions).  The Georgia Supreme Court has explained

that "decisions of [the Georgia Court of Appeals] [are] intended to be final, except

in a narrow class of cases" involving "great public concern" or matters of "gravity

and importance." *Adair v. Traco Div.*, 14 S.E.2d 466, 469 (Ga. 1941).  Thus, "[a]s

to most cases, [the Georgia Court of Appeals] is and should be considered as a

court of last resort, though technically it is not such." *Id.*

---

[1] Under Georgia law, parties are free to stipulate what law should govern their
contracts, and courts will enforce a contractual choice of law clause that is not
contrary to public policy. *See CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Grp.*,
642 S.E.2d 393, 396 (Ga. Ct. App. 2007).

In this case, the Court must apply Georgia law as evidenced by the Waiver Statute and either Georgia Supreme Court cases interpreting the statute or Georgia Court of Appeals opinions doing the same if the Georgia Supreme Court has not decided the issue.  To that end, the Court first looks at the rules of statutory construction under Georgia law and then considers case law interpreting the Notice requirement at issue here.

The Georgia Supreme Court has provided that "when considering the meaning of a statute[,] courts must afford the words of the statute their ordinary signification [and] . . . must presume that the General Assembly meant what it said and said what it meant."  *Arby's Rest. Grp., Inc. v. McRae*, 734 S.E.2d 55, 57 (Ga. 2012) (citations and quotation marks omitted; alteration in original).  An overarching principle is that "judicial construction is not only unnecessary but [it is] forbidden" where "the language of a statute is plain and unambiguous."  *Id*; *see also Deal v. Coleman*, 751 S.E.2d 337, 341 (Ga. 2013) (stating that "if the statutory text is 'clear and unambiguous,' [the court] attribute[s] to the statute its plain meaning, and [the court's] search for statutory meaning is at an end").  As relevant in this case, "'lien statutes in derogation of the common law must be strictly construed in favor of the property owner and against the materialman.'"

*Bibler Masonry Contractors, Inc. v. J. T. Turner Constr. Co., Inc.*, 798 S.E.2d 19,

21 (Ga. Ct. App. 2017) (citation omitted).

Because the parties agree that the Georgia Supreme Court has not decided

the specific statutory construction question raised here (*i.e.*, whether the failure to

file a Notice extinguishes the debt), the Court must look to Georgia Court of

Appeals opinions answering the question.

In *ALA Construction Services, LLC v. Controlled Access, Inc.*, a

subcontractor submitted invoices and a lien waiver pursuant to the Waiver Statute

but failed to file a Notice even though the invoices remained unpaid.  833 S.E.2d

570, 570–71 (Ga. Ct. App. 2019).  The Georgia Court of Appeals reversed the trial

court's finding that the subcontractor's action for the unpaid invoices was proper.

*See id*.  The appellate court "conclude[d] that the plain and unambiguous language

of [O.C.G.A.] § 44-14-366(f)(1) clearly provide[d] that the General Assembly

intended the [w]aiver to be binding against the parties for 'all purposes,' not just

for the purposes of preserving the right to file a lien on the property."  *Id*. at 572.

The court emphasized that "the statute clearly and unambiguously provide[d] that

upon signing the [w]aivers, [the subcontractor] had a statutorily imposed

responsibility to file either a claim of lien or an affidavit of nonpayment if it

wished to keep the debt alive beyond 60 days."  *Id*.  Because the subcontractor did

not comply with the Notice requirement, the court found that "the debt [was] extinguished."[2]  *Id.*

The *ALA* court was not persuaded by the subcontractor's argument that the Waiver Statute barred only the filing of a claim of lien in the event of noncompliance with the Notice requirement and that the subcontractor could still bring an action for payment of the underlying debt.  *See id.*  The court held that

> taken in context and construing the lien statute in favor of the property owner, the statutory language, which includes mandatory notice language in the [waiver] form, shows that the materialman must file an affidavit of nonpayment within 60 days of the date shown on the waiver and release or else that the amount at issue "shall conclusively be deemed paid in full," and that the presumption of payment is "binding against the claimant for all purposes."

*Id.*

The court also pointed out that the cases cited by the subcontractor in support of its argument were inapposite.  In particular, the court explained that *Hampshire Homes v. Espinosa Construction. Services*, 655 S.E.2d 316 (Ga. Ct. App. 2007), was not decided under the Waiver Statute and did not consider or discuss the statute, and *Benning Construction Company v. All-Phase Electric Supply Company*, 424 S.E.2d 830 (Ga. Ct. App. 1992), and *David Shapiro & Company, v. Timber Specialties*, 233 S.E.2d 439 (Ga. Ct. App. 1977), were

---

[2] The Georgia Supreme Court denied certiorari in the case.

9

decided before the Waiver Statute was enacted and thus did not interpret the

statute's language.  *See ALA*, 833 S.E.2d at 572.

The Georgia Court of Appeals similarly decided in *Arco Design/Build, LLC*

*v. Savannah Green I Owner, LLC* that the failure to file the required Notice under

the Waiver Statute extinguished the debt.  875 S.E.2d 385, 386 (Ga. Ct. App.

2022).  There, the contractor sought a declaratory judgment that the

subcontractor's affidavit of nonpayment filed a few months after the end of the

sixty-day period was untimely, and therefore, any debt the contractor owed was

extinguished by operation of law.  *See id*. at 368-87.  The subcontractor argued that

the 2020 Statewide Judicial Emergency Orders (issued in connection with the

COVID-19 pandemic) extended the deadline for filing the Notice and that it should

be permitted to bring a breach of contract action to collect the outstanding

payment.  *See id*. at 368-87.  The court disagreed, finding that the emergency

orders did not toll the filing deadline, and as such, the trial court correctly found

that the Notice was untimely and the debt was extinguished.  *See id*. at 392.  The

court stated that this conclusion was consistent with Georgia's principle of strictly

construing lien laws in favor of the owner.  *See id*.  The court also noted that

although the outcome seemed "draconian as it relates to [the subcontractor's]

claims for payment," the court does not "'have the authority to rewrite statutes.'"

*Id*. n.11. (citation omitted).

Here, the Court finds that the Waiver Statute is unambiguous in its

provisions that (i) a waiver signed pursuant to the statute is "binding against the

claimant for all purposes"; and (ii) an invoice "shall conclusively be deemed paid

in full" if the subcontractor does not comply with the Notice requirement.  These

provisions establish in plain language that a subcontractor that wishes to preserve

its rights must file the required Notice, and failure to do so results in a waiver of

the right to receive payment "for all purposes."  Given the clear language in the

statute and because the Court must assume that the Generally Assembly meant

what it said in the statute, the statute requires no further construction and must be

enforced according to its provisions.  Consistent with those provisions, the Court

concludes that the Outstanding Invoices are extinguished and Robinson is barred

from bringing suit for their payment because it did not file the requisite Notice.

This conclusion is supported by the Georgia Court of Appeals' interpretation

of the Waiver Statute in both *ALA* and *Arco*.  As set forth above, the *ALA* court

found in analogous circumstances that a subcontractor was not entitled to bring suit

for payment of unpaid invoices because it failed to file the Notice.  The court

reached the same conclusion in *Arco*, finding that the contractor's debt was

extinguished because the subcontractor missed the deadline to file the Notice.

The *ALA* and *Arco* opinions are from Georgia's intermediate appellate court,

which the Georgia Supreme Court has described as a court of last resort as to most

cases and whose decisions are intended to be final, except in narrow

circumstances.  Since there is no Georgia Supreme Court case on point, the Court

is bound by the Georgia Court of Appeals decisions unless Robinson offers "some

persuasive indication that the [Georgia Supreme Court] would decide the issue

otherwise." *Flintkote*, 678 F.2d at 945.

For that purpose, Robinson argues that:  (i) the *ALA* court misinterpreted the

scope of the Waiver Statute and that the underlying debt exists outside the

framework of the statute as a matter of contract law; (ii) the *ALA* court failed to

follow certain canons of construction, including the canon requiring courts to view

the statute in the context in which the statute regulates; (iii) the *ALA* court's

interpretation of the Waiver Statute will result in unreasonable consequences; (iv)

the Georgia legislature's subsequent revision of the statute is indication that *ALA*

was wrongly decided; and (v) the Georgia Supreme Court's denial of certiorari in

the *ALA* case was not a ruling on the merits and does not mean that the *ALA*

decision is binding.  However, these arguments are merely disagreements with the

reasoning of the *ALA* opinion or are otherwise inconsistent with Georgia law.  For

example, under Georgia Supreme Court precedent, the *ALA* court was not required

to consider other canons of statutory construction once it determined that the

language of the statute was clear and unambiguous.  In any event, the *ALA* opinion

expressly stated that it considered the statute both in context and under the doctrine

requiring a lien waiver to be construed strictly and in favor of the owner.

Further, Robinson provided no apposite authority for its argument that the

Notice requirements do not supersede contract law.  It cited cases like *Hampshire*

*Homes*, *Benning Construction* and *David Shapiro*, which, as the Georgia Court of

Appeals found in *ALA*, either did not address the Waiver Statute or were decided

before the Waiver Statute was enacted and thus did not interpret its language.  In

any event, the Waiver Statute is clear that a waiver is binding for *all purposes*,

unless the requisite steps to keep the debt alive are followed.  That would include

arguments under contract law.  Indeed, Robinson can point to no authority that

supports its position that the principles of contractual waiver (that IHI waived the

right to require compliance with the Waiver Statute through its course of

performance) or estoppel (that IHI previously acknowledged that payment was due

on the invoices) can modify either the Notice requirement or the ultimate

consequence that the debt "shall conclusively be deemed paid in full" if the filing requirement is not met.

In the later *Arco* opinion, the Georgia Court of Appeals specifically recognized the arguably inequitable result of allowing a seemingly valid debt to be extinguished but noted that its role was to interpret the statute, not to make law. Contrary to Robinson's arguments, the Georgia legislature's revision of the Waiver Statute after the *ALA* opinion was rendered is not necessarily an indication that *ALA* was wrongly decided, whereas the Georgia Supreme Court's denial of certiorari in the *ALA* case could be an indication that that court did not consider the opinion to be incorrect.

In short, none of the arguments that Robinson offers for disregarding the Georgia Court of Appeals opinions provides "persuasive indication" that the Georgia Supreme Court would interpret the Notice requirement differently and reach the opposite result in this case. Accordingly, the Court is not authorized to disregard the interpretation of the Waiver Statute provided in the *ALA* and *Arco* opinions. To the contrary, the Court is bound by those opinions.

Based on the foregoing analysis, the Court finds that the Outstanding Invoices were extinguished by Robinson's failure to file a claim of lien or an

14

affidavit of nonpayment under the Waiver Statute.  The Court therefore **GRANTS**

IHI's Motion (ECF No. 139).

      **SO ORDERED** this 30th day of September, 2022.

_____

**J. P. BOULEE**
United States District Judge

15